DAVID J. VAN HAVERMAAT (Cal. Bar No. 175761)
E-mail: vanhavermaatd@sec.gov
LORRAINE B. ECHAVARRIA (Cal. Bar No. 191860)
E-mail: echavarrial@sec.gov
TERI M. MELSON (Cal. Bar No. 185209)
E-mail: melsont@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Michele Wein Layne, Associate Regional Director
John M. McCoy III, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

FILED
2009 JUL 27 AM 11: 19
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY:

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

DIVERSITY CAPITAL INVESTMENTS, INC.; DIVERSITY CAPITAL BANCORP DE MEXICO LTD.; STRONG'S CAPITAL INVESTMENTS, INC.; THE OPTIMUS FUND, INC.; DAMIAN MENESES; EDWARD LANTZ FERGUSON, and JOEL S. LEY, JR.

Defendants,

and

JUAN GALINDO FLORES and SOCORRO TERLIZZI,

Relief Defendants.

Case No. **CV09-5449 ODW(RCX)**

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

2. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. Specifically, individuals residing in this district purchased the securities offered and sold by Defendants.

## SUMMARY

3. This matter involves the ongoing fraudulent offer and sale of securities by three individual defendants and the entities that they control and through which they have solicited investors: Damian Meneses ("Meneses"), who operates Diversity Capital Investments, Inc. ("Diversity Capital") and its affiliate, Diversity Capital Bancorp de Mexico Ltd. ("DCBM"), Edward Lantz Ferguson ("Ferguson"), president of Strong's Capital Investments ("Strong's Capital"), and Joel S. Ley, Jr. ("Ley"), president of The Optimus Fund, Inc. ("Optimus Fund").

4. From May 2007 through the present, Defendants have raised at least $14.7 million from investors in the United States and Mexico. Defendants solicit investors by referrals from existing customers and, in the cases of Diversity Capital

and the Optimus Fund, through password protected websites that invite potential investors to contact them to learn more about the investments they offer. Diversity Capital and the Optimus Fund continue to solicit investors through their websites.

5. Meneses, together with relief defendant Juan Galindo Flores ("Flores"), operates Diversity Capital and DCBM. They collected over $12.5 million from investors between May 2007 and May 2008. Diversity Capital may be continuing to accept investor funds through an offshore wire transfer platform that is registered in the British Virgin Islands, Cayman Islands and Nevis.

6. Ferguson, through Strong's Capital, collected over $4.4 million from investors from November 2007 through November 2008. Of that amount, Ferguson transferred nearly $3 million to Diversity Capital. Ley, through the Optimus Fund, has collected at least $1 million from investors since May 2008. Of that amount, Ley transferred less than $270,000 to Diversity Capital and DCBM. As of at least March 31, 2009, the Optimus Fund was still receiving investor funds.

7. Defendants make several misrepresentations to investors. Specifically, Defendants represent to investors that their money will be used for foreign currency trading by Diversity Capital and that they will receive returns of at least 4% per month and, in some cases, as much as 8.25% per month. Contrary to Defendants' representations to investors, Diversity Capital does not engage in foreign currency trading. Instead, it uses funds from later investors to pay earlier investors in a Ponzi-like fashion.

8. In addition, Ferguson and Ley misrepresent to investors in Strong's Capital and the Optimus Fund, respectively, that 100% of their money will be sent to Diversity Capital, where their funds will be used for foreign currency trading. They tell investors that Diversity Capital pays them at least 15% per month, from which they pay investors their returns. In fact, Ferguson and Ley have failed to send substantial amounts of the investor funds they collected on to Diversity Capital, and they have received from Diversity Capital only a few insignificant

payments, which are not sufficient to make the promised payments to their investors. Instead of sending investor funds to Diversity Capital for foreign currency trading, Ferguson and Ley each have been using new investor funds to pay earlier investors.

9. Defendants also tout the safety of investments in their programs. Defendants represent to investors that investor funds are secured by promissory notes and loan agreements. Defendants tell investors that these notes and agreements mean that even if the foreign currency trading was not successful during a month, investors are guaranteed to receive their monthly returns because their investments are backed by these notes and agreements. In addition, Diversity Capital, Strong's Capital, and the Optimus Fund all claim to have substantial reserves and assets that could be used to pay investors. Contrary to Defendants' representations to investors, the claimed reserves do not exist.

10. Defendants are also misappropriating investor funds. Undisclosed to investors, Diversity Capital, in addition to using new investor funds to pay earlier investors, has used hundreds of thousands of dollars of investor funds for personal expenses of its principals, including mortgage and auto loan payments, meals, travel, and related purchases. Contrary to Ferguson's representations to investors in Strong's Capital that all of their funds will be used for foreign currency trading, Ferguson has transferred hundreds of thousands of dollars of investor funds to his personal account, from which it was drawn as a purported salary and spent on personal expenses, legal bills, retail purchases and travel. Similarly, contrary to Ley's representations to investors in the Optimus Fund, Ley has withdrawn over $123,000 in investor funds in cash and used at least an additional $158,000 for travel, automobile and motorcycle payments, meals, and retail purchases.

11. Defendants' scheme appears to be collapsing, if it has not already done so. In October 2008, investors in Diversity Capital were sent notifications informing them that their accounts would be frozen for at least six months due to

the worldwide economic crisis and the devaluation of the Euro. Meneses went into hiding at that time. In November 2008, Strong's Capital sent out nearly identical notifications to its investors. Defendants ceased making payments to their investors in late 2008.

12. Defendants, by engaging in the conduct described in this Complaint, have violated, and unless enjoined will continue to violate, the antifraud and securities registration provisions of the federal securities laws. By this complaint, the Commission seeks emergency relief against Defendants, including a temporary restraining order, an asset freeze, accountings, a repatriation order, an order expediting discovery, and an order prohibiting the destruction of documents, as well as preliminary and permanent injunctions, disgorgement with prejudgment interest, and civil penalties. The Commission also seeks an asset freeze and a repatriation order against two relief defendants who received proceeds from the fraudulent scheme, along with disgorgement from them.

## DEFENDANTS

13. Diversity Capital Investments, Inc. was incorporated in California in August 2007 and its principal place of business is in Chula Vista, California. It uses its website, www.diversitycapital.co.nz, to offer and sell investments. No registration statement has been filed or is in effect with the Commission in connection with the offer and sale of the Diversity Capital investments. Socorro Terlizzi ("Terlizzi"), who is believed to be Meneses' wife, is listed as the president of Diversity Capital in its filing with the California Secretary of State.

14. Diversity Capital Bancorp de Mexico Ltd. was incorporated in New Zealand in April 2008 and its principal place of business appears to be the same as the Diversity Capital office in Chula Vista, California. The www.diversitycapital.co.nz website states that DCBM is a "Finance Company" that is "not a registered bank under supervision by the Reserve Bank of New Zealand." Its website claims that it has offices throughout Mexico and Panama.

No registration statement has been filed or is in effect with the Commission in connection with the offer and sale of the DCBM investments. DCBM has not filed a prospectus and is not regulated as an issuer of securities under New Zealand securities law. Meneses represents himself as the president of DCBM, and Flores is the sole director of DCBM. Defendants used Diversity Capital and DCBM interchangeably when communicating with investors. They told investors that DCBM was the affiliate of Diversity Capital that was responsible for conducting the purported foreign currency trading. Investors in Diversity Capital were sent letters from DCBM regarding the status of their Diversity Capital accounts. The DCBM web sites, www.diversitydemexico.com and www.dcbm.com, redirect investors to the Diversity Capital web site.

15. Strong's Capital Investments, Inc. was incorporated in California in September 2007 and its principal place of business is in Chula Vista, California. It used its website, www.strongscapital.com, to offer and sell investments that guaranteed monthly returns of 3% to 6%. No registration statement has been filed or is in effect with the Commission in connection with the offer and sale of the Strong's Capital investments.

16. The Optimus Fund, Inc., was incorporated in California in April 2008 and its principal place of business is in San Diego, California. It uses its website www.theoptimusfund.com to offer and sell investments that guarantee monthly returns of 4%. No registration statement has been filed or is in effect with the Commission in connection with the offer and sale of the Optimus Fund investments.

17. Damian Meneses, aka Damian Meneces, aka Abel Dominguez Meneces, aka Francisco D. Dominguez Meneses, age 36 or 37, is believed to be a citizen of Mexico, and it is believed that he is currently in Mexico. Meneses identifies himself as the vice president of Diversity Capital and the president of DCBM, and he has solicited investors in Diversity Capital through meetings he has held in California

and in Mexico. Meneses is not registered with the Commission and has not held any securities licenses. Meneses is an authorized signatory for all of Diversity Capital's bank accounts.

18. Edward Lantz Ferguson, age 37, resides in Chula Vista, California. Ferguson has identified himself as the president of Strong's Capital and has solicited investors in Strong's Capital. Ferguson is not registered with the Commission and has not held any securities licenses. Ferguson is the authorized signatory for all of Strong's Capital's bank accounts.

19. Joel S. Ley Jr., age 31, resides in Chula Vista, California. Ley identifies himself as the president of the Optimus Fund and he solicits investors in the Optimus Fund. He also represented himself as "VP of Alternative Investments" for DCBM. Ley is not registered with the Commission and has not held any securities licenses. Ley is the sole authorized signatory for the Optimus Fund's bank accounts, and he is also a signatory for a Diversity Capital account.

**RELIEF DEFENDANTS**

20. Juan Galindo Flores, aka Juan Flores Galindo, age 48, resides in San Diego, California. His current whereabouts are unknown. Investors were told that Flores founded Diversity Capital, and he is listed as the sole director of DCBM. Flores has received at least $300,000 in investor funds from Diversity Capital.

21. Socorro Guerrero Terlizzi, age 41, resides in San Diego, California. Terlizzi is listed as the agent for service of process for Diversity Capital with the California Secretary of State. Terlizzi is believed to be Meneses' wife. Several of the Diversity Capital bank accounts are in the name of Terlizzi (as well as Meneses). She has received more than $56,000 in direct payments from investor funds and, along with Meneses, she received over $300,000 in additional investor funds.

///

///

## THE FRAUDULENT OFFERING

### A. Overview And Structure Of The Investment Program

22. From at least May 2007 until approximately May 2008, Diversity Capital raised over $12.5 million from investors in the United States and Mexico. Meneses represented to investors in Diversity Capital that their money would be pooled together and used for foreign currency trading, and that they would earn returns of at least 4% per month.

23. Meneses, who identifies himself to investors as the vice president of Diversity Capital and the president of DCBM, worked out of the Diversity Capital office in Chula Vista, California and also met with investors at their homes in the Los Angeles area. In addition, Meneses solicited investors from California during a meeting in Tijuana, Mexico. Meneses told investors that Diversity Capital was owned by Flores and that Flores served as the president of Diversity Capital. Meneses told investors that he began running the Diversity Capital office in Chula Vista because Flores was working in Europe to oversee the foreign currency trading for Diversity Capital.

24. Diversity Capital appears to target members of the Hispanic community and members of Meneses' church. For example, Meneses told investors that although the minimum investment in Diversity Capital was $100,000, he would make an exception for members of the church and would allow them to invest in Diversity Capital if they had $10,000 to invest. Diversity Capital's solicitation materials and its website contain information in both English and Spanish.

25. Meneses told investors that they could act as brokers for Diversity Capital and would earn a monthly fee of 1% to 3% of the amount invested by any investor brought into the Diversity Capital program. Meneses also encouraged Diversity Capital investors to refinance their homes and to invest the proceeds in Diversity Capital. Many investors did so.

26. Ferguson and Ley represent to investors in Strong's Capital and the Optimus Fund, respectively, that all of their money is sent to Diversity Capital where it is used for foreign currency trading. The offering materials for Strong's Capital represented that "[t]here will be absolutely no commissions charged to your account." Ferguson initially operated Strong's Capital out of the same office location as Diversity Capital. Ley informs investors that he worked for Diversity Capital for five years and he stated that the Optimus Fund was the United States arm of Diversity Capital. From November 2007 to November 2008, Ferguson raised approximately $4.4 million from approximately 34 investors in Strong's Capital. From May 2008 through at least March 2009, Ley raised over $1 million from investors in the Optimus Fund.

**B. Defendants Falsely Represent That Investors Profit From Foreign Currency Trading And That They Will Receive A Guaranteed Monthly Return Of At Least 4%**

27. Meneses represents to investors in Diversity Capital that Diversity Capital traders earn, on average, 15% each month through foreign currency trading and that they sometimes earned as much as 19-20% in a month. Meneses tells investors that Diversity Capital has "a large team" that monitors the news and determines which currencies to buy and sell. Investors are told that although Diversity Capital makes very little on each trade, the traders engage in thousands of transactions per day, and that this heavy volume of trading enables Diversity Capital to earn its returns, from which they pay investors a guaranteed return of 4% each month. The Diversity Capital website includes a graph that lists annual returns for "DCBM" as 48%. Diversity Capital provides investors with monthly statements that list a 4% return on their investment each month.

28. Ferguson and Ley similarly inform investors in Strong's Capital and the Optimus Fund that all of their money is sent to Diversity Capital, where it purportedly is used for foreign currency trading through Varengold Bank by

Diversity Capital's experienced traders. Ley claims that the trading is conducted by very experienced traders in Germany who were licensed by Varengold but who "work for us."

29. Similarly, Strong's Capital's offering materials promised returns of 3% to 6% per month. Ferguson offered investors a greater monthly rate of return if they invested more than $10,000. Ferguson promised one investor, who invested nearly $1 million in Strong's Capital, monthly returns of 8.25%. Ferguson sent investors monthly statements that reflected a 3% to 8.25% monthly return. In April 2008, Ferguson sent a mass e-mail to investors stating that "our return for last month was 15.23% and we continue to expect the same for the rest of 2008."

30. Ferguson told investors in Strong's Capital that he received from Diversity Capital foreign currency trading profits of approximately 15% each month, and that investors were paid out of those profits. Ley represented that from April 2008 (when he started the Optimus Fund) until February 2009, the Optimus Fund earned almost 30% each month from its investments with Diversity Capital.

31. In fact, Diversity Capital did not engage in any foreign currency trading, and investor funds were not used for that purpose. Moreover, none of the defendants has ever traded through an account at Varengold Bank. In August 2008, Flores opened an account with Varengold under the name of Diversity Capital Investments Corp., but he never funded the account.

32. Although Ferguson told investors in Strong's Capital that 100% of their money would be sent to Diversity Capital for foreign currency trading, he stopped sending investor funds on to Diversity Capital in May 2008. Between May 2008 and October 2008, Ferguson collected over $536,000 from various investors but never transferred those funds to Diversity Capital. Instead, Ferguson used investor funds for his own personal use and to pay out to earlier investors. While Ferguson and Ley both informed investors that they received monthly payments from Diversity Capital and would use those funds to pay investors,

neither of them received regular or significant payments from Diversity Capital that would have enabled them to do so.

33. Ley represents to investors that they will receive a guaranteed return of 4% per month. Ley sends investors monthly statements from the Optimus Fund which represent that they are, in fact, earning 4% per month on their investments.

**C. <u>Defendants Misrepresent The Safety Of Investments In Their Programs</u>**

34. Defendants tout the safety of investments in Diversity Capital's purported foreign currency trading program. Meneses represents to investors that Diversity Capital is insured and regulated. He tells investors that Diversity Capital conducts "trading only with 25 or 30%" of investor funds. Meneses also informs investors that he would not risk investor funds and represents that "we have controls, if there are losses, those losses will be covered with the extra money that has been earned on other occasions." The Diversity Capital website states that Diversity Capital "represents one of the largest private funds in the market" and has a "diverse group of corporate and private investors who have trusted us with over 1.7 billion dollars!"

35. Diversity Capital represents to investors that its trading strategy "is a conservative one." Diversity Capital's purported goal is to generate a fifteen to twenty percent return each month. Investors are told that, once Diversity Capital reaches that goal, it ceases trading for the month.

36. Diversity Capital represents to investors that over fifty percent of its monthly gains are used to fund a reserve account. The reserve account purportedly is set up to safeguard Diversity Capital investors "if we should ever have a bad month." Defendants also represent to investors that Diversity Capital's reserve account is "roughly five times greater than the amount we trade any given month."

37. Ferguson represented to potential investors that he had substantial assets backing Strong's Capital and always maintained a reserve fund of $500,000.

Strong's Capital's offering materials assured investors that Ferguson and Strong's Capital performed due diligence on Diversity Capital. Ferguson told investors that Diversity Capital was a safe investment and that Diversity Capital employed stop losses and other techniques in order to ensure that it never lost any money. Ferguson also informed investors that once Diversity Capital traders earned 15% they ceased trading for the rest of the month. Ferguson and Strong's Capital did not disclose to investors any risk involved in investing with Strong's Capital.

38. When investors received a questionnaire from the California Department of Corporations regarding Strong's Capital's failure to register its offering with that agency, Ferguson falsely assured investors in writing that "[t]he money you have invested with us is currently safe and is earning the interest that you receive on your statements." Ferguson falsely informed investors that he was "filing with the SEC, NASD and the California Department of Corporations" and he stated that, in doing so, "it adds credibility to our program and gives everyone more confidence." Ferguson also informed investors that they could liquidate their account as long as they provided him with sixty days notice.

39. Ley touts the safety of investments with the Optimus Fund. Ley represents to investors that the Optimus Fund has at least $7 million in assets and maintains a reserve account "to safeguard our investors if we should ever need it."

40. All of Defendants' representations are false. Diversity Capital has not generated any profits from foreign currency trading and relies on later investor funds to pay earlier investors in a Ponzi-like fashion. In addition, Diversity Capital never had more than a total of $2.1 million in all of the bank accounts under its name, which is significantly less than the $1.7 billion it claimed to have under management. Although Diversity Capital assured investors that their money was safe and was secured by a loan agreement and promissory note, investors have not been repaid, despite their repeated requests. Diversity Capital's purported reserve account does not exist.

41. Similarly, Ferguson used investor funds to pay out earlier investors and he never maintained a reserve fund. He personally filed Chapter 13 bankruptcy petitions in April and May 2008 – the very same time at which he was soliciting investors in Strong's Capital and representing that his fund was extraordinarily profitable. Ferguson did not receive any significant or regular payments from Diversity Capital and, therefore, he had no basis for the returns he listed in the written monthly statements he sent out to investors.

42. Ley also has used later investor funds to pay earlier investors and, although he claimed to maintain a substantial reserve account, his combined bank accounts never had a balance greater than $146,000. Although Ley sent investors monthly statements that indicated they were earning 4% per month on their investment and claiming that the Optimus Fund earned almost 30% each month from Diversity Capital, it does not appear that he ever received more than a total of $5,000 from Diversity Capital.

### D. Defendants Are Misappropriating And Misusing Investor Funds

43. Contrary to Defendants' representations to investors in Diversity Capital that 100% of their money would be used for foreign currency trading, much of the investors' funds are used for the principals' personal expenses and related purchases. Diversity Capital, in addition to using new investor funds to pay existing investors, uses investor funds for its' principals' personal expenses, including mortgage and auto loan payments, meals, travel, and retail purchases. Flores received more than $300,000 in investor funds from Diversity Capital. Terlizzi and Meneses together received more than $300,000 in investor funds, and Terlizzi separately received more than $56,000 of additional investor funds. Millions of dollars of investor funds have been transferred to an assortment of payees who cannot be identified, including substantial transfers to accounts in Liechtenstein and Mexico.

44. Contrary to Strong's Capital's representations that all of the investors'

funds would be forwarded to Diversity Capital for foreign currency trading, Ferguson misappropriated large amounts of investor funds. Ferguson transferred $329,000 of investor funds to one of his separate accounts with the notations "salary for me" or "salary to Eddie." He withdrew over $135,000 in cash from the bank account that holds investor funds. Additionally, he spent over $58,000 of investor funds on personal expenses and retail purchases, over $37,000 on legal bills, and over $12,000 on travel. Ferguson told one investor, who became concerned after Strong's Capital stopped making payments to investors, that the "worst thing" he had done was to use the Strong's capital account to pay for gas for his truck. Ferguson told the investor that he ceased that practice after his accountant advised him to do so.

45. Despite Ley's similar representations, Ley misappropriated substantial amounts of investor funds. Ley withdrew over $123,000 of investor funds in cash and used over $158,000 of investor funds for travel, automobile and motorcycle payments, meals, and retail purchases. None of the investors authorized Defendants to use their money for personal expenses.

**E. Although Defendants' Scheme Appears To Have Collapsed, Diversity Capital And Strong's Capital Continue To Make Misrepresentations In Order To Lull Investors**

46. In late 2008 Diversity Capital ceased making payments to investors and informed investors that it could no longer afford to trade foreign currency because of the overall financial crisis and the devaluation of the Euro. In October 2008, Diversity Capital sent a "Commitment Statement" to investors stating that all customer accounts had been frozen and that investor funds would not be available for six to twelve months. In November 2008, Strong's Capital ceased paying investors and sent investors a nearly identical letter. Strong's Capital and Diversity Capital have continued to lull investors with false written assurances that their principal is safe and they will be repaid soon. But none of these entities have

sufficient funds to repay investors. For example, the combined balance of all of Ferguson's bank accounts was less than $80,000 in November 2008 – the same month that he assured investors that their principal and interest were safe.

47. Both Diversity Capital and Strong's Capital have recently made additional misrepresentations in an effort to lull investors and prevent them from making complaints to the authorities. For example, Diversity Capital has falsely informed investors that it is working on a repayment plan and that it is working with the California Department of Corporations to ensure that it is complying with the "details required by that department." No such discussions have taken place. Diversity Capital also informed investors that it would liquidate their accounts at the end of April 2009. Similarly, on March 31, 2009, Ferguson sent an e-mail to investors stating that Strong's Capital expected to return investors' funds within a few weeks. To date, Diversity Capital and Strong's Capital have failed to repay investors.

## FIRST CLAIM FOR RELIEF

### Unregistered Offer And Sale Of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (Against All Defendants)

48. The Commission realleges and incorporates by reference paragraphs 1 through 47 above.

49. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, made use of means or instrumentalities of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or delivery after sale.

50. No registration statement has been filed with the Commission or has been in effect with respect to the offering alleged herein.

51. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of

the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## SECOND CLAIM FOR RELIEF

### Fraud In The Offer Or Sale Of Securities

### Violations of Section 17(a) of the Securities Act

### (Against All Defendants)

52. The Commission realleges and incorporates by reference paragraphs 1 through 47 above.

53. Defendants, and each of them, by engaging in the conduct described above, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly:

a. with scienter, employed devices, schemes, or artifices to defraud;

b. obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

54. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## THIRD CLAIM FOR RELIEF

### Fraud In Connection With The Purchase Or Sale Of Securities

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (Against All Defendants)

55. The Commission realleges and incorporates by reference paragraphs 1

through 47 above.

56. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

a. employed devices, schemes, or artifices to defraud;

b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

57. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## FOURTH CLAIM FOR RELIEF

**(Against All Relief Defendants)**

58. The Commission realleges and incorporates by reference paragraphs 1 through 47 above.

59. In the manner described above, each relief defendant received ill-gotten gains for which they gave no consideration and to which they have no legitimate claim.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that the defendants committed

the alleged violations.

## II.

Issue judgments, in forms consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining the defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a), 5(c) and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c) and 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## III.

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order, and a preliminary injunction freezing the assets of each of the defendants and relief defendants, directing the assets of each of the defendants and the relief defendants to be repatriated to the United States, prohibiting each of the defendants from destroying documents, granting expedited discovery, and requiring accountings from each of the defendants.

## IV.

Order each defendant and relief defendant to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

## V.

Order each defendant to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable

application or motion for additional relief within the jurisdiction of this Court.

**VII.**

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: July 27, 2009

David J. Van Havermaat
Attorney for Plaintiff
Securities and Exchange Commission

David J. Van Havermaat, Cal. Bar No. 175761
Teri M. Melson, Cal. Bar No. 185209
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>PLAINTIFF(S)<br>v.<br>DIVERSITY CAPITAL INVESTMENTS, INC.; DIVERSITY CAPITAL BANCORP DE MEXICO LTD.; STRONG'S CAPITAL INVESTMENTS, INC.; THE OPTIMUS FUND, INC.; DAMIAN MENESES; EDWARD LANTZ FERGUSON; and JOEL S. LEY, JR., Defendants<br>JUAN GALINDO FLORES and SOCORRO TERLIZZI, Relief Defendants<br>DEFENDANT(S). | CASE NUMBER<br><br>**CV09-5449 ODW(RCX)**<br><br>**SUMMONS** |

TO: DEFENDANT(S): ______________________________

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ____________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, David J. Van Havermaat/Teri M. Melson, whose address is Securities and Exchange Commission, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, CA 90036. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JUL 27 2009

By: Nancy Castro [signature] SEAL
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
DIVERSITY CAPITAL INVESTMENTS, INC.; DIVERSITY CAPITAL BANCORP DE MEXICO LTD.; STRONG'S CAPITAL INVESTMENTS, INC.; THE OPTIMUS FUND, INC.; DAMIAN MENESES; EDWARD LANTZ FERGUSON; and JOEL S. LEY, JR., Defendants
JUAN GALINDO FLORES and SOCORRO TERLIZZI, Relief Defendants

San Diego County

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

David J. Van Havermaat and/or Teri M. Melson (323) 965-3998
Securities and Exchange Commission
5670 Wilshire Blvd., 11th Floor, Los Angeles, CA 90036

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only**
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT: $**__________

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
The Complaint alleges violations of the federal securities laws. 15 U.S.C. §§ 77e(a), 77e(c) & 77q(a); and 15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5 thereunder.

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☑ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpractice
- ☐ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus-Alien Detainee
- ☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities - Employment
- ☐ 446 American with Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/ Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE / PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: **CV09-5449 ODW(RCX)**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): ______

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☑ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Diversity Capital Investments, Inc. - San Diego; Diversity Capital Bancorp de Mexico Ltd. - San Diego; Strong's Capital Investments, Inc. - San Diego; - The Optimus Fund, Inc. - San Diego; Edward Lantz Ferguson - San Diego; Joel S. Ley, Jr. - San Diego; Juan Galindo Flores - San Diego; and Socorro Terlizzi, San Diego | Damian Meneses - Mexico |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** 7/27/09

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |